J-A08038-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| T.D., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| A.H., | : | |
| | : | |
| Appellee | : | |
| | : | No. 3421 EDA 2017 |

Appeal from the Order Entered September 20, 2017
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s): OC1007233

BEFORE: PANELLA, LAZARUS, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                **FILED JULY 12, 2018**

T.D. (Mother) *pro se* appeals from the order entered September 20, 2017, which made final the court's September 11, 2017 interim custody order, providing, *inter alia*, that A.H. (Father) retain primary physical and sole legal custody of their son, J.H., born in April 2010, and denying Mother's petitions for modification of custody. We affirm.

Mother and Father, who were never married, have been in active litigation over the custody of J.H since 2010. Throughout the past eight years, there have been numerous pleadings and petitions filed, as well as several hearings, including at least four contested custody trials. Central to the protracted litigation of this case is the acrimonious relationship shared by the parties. Necessary to the disposition of this case is an understanding

* Retired Senior Judge assigned to the Superior Court.

of the complicated background. Therefore, we begin with a detailed recitation of the factual and procedural history.

On July 2, 2010, Father filed a complaint for custody requesting "joint custody." Complaint for Custody, 7/2/2010, at 2 (unnumbered). On July 13, 2010, Mother filed a cross-complaint for custody and an emergency custody petition. At the time of the filings, Mother was residing at a "confidential address in the State of Georgia." Complaint, 7/13/2010, at 1 (unnumbered). Within her complaint for custody and emergency petition, Mother averred J.H. had been living with her since birth until several days prior to the filing of the petition. *See* Emergency Custody Petition, 7/13/2010, at 2 (unnumbered) (stating that Father took J.H. and "prevented Mother from having any contact with [J.H.] since July 8, 2010").

According to the emergency petition, Mother claimed she was in the Philadelphia area with J.H. for a child support conference and had left J.H. at the home of Father's neighbor while attending the conference with Father. Emergency Custody Petition, 7/13/2010, at 2 (unnumbered). Mother averred that, at the conference, Father became "extremely agitated at being ordered to pay child support to Mother," proceeded to drive to the neighbor's home, picked up J.H., and refused to allow Mother to have contact with J.H. since then. *Id.* After Mother confronted Father at his residence, Father filed a protection from abuse petition against Mother and he was subsequently granted an Emergency *Ex Parte* Order. *Id.* At the time of the filing of

Mother's emergency petition, a hearing on Father's protection from abuse petition was pending.

Based upon the foregoing, Mother sought primary physical and sole legal custody of J.H, but based on the emergency custody petition, requested "sole physical custody of [J.H.] pending further [o]rder of [c]ourt." Emergency Custody Petition, 7/13/2010, at 3 (unnumbered); Complaint, 7/13/2010, at 1 (unnumbered). A temporary order was entered on July 14, 2010, awarding Mother primary physical custody of J.H. The parties were to share legal custody, and Father was granted partial physical custody.

A custody hearing was held on the parties' dueling complaints for custody, and on November 24, 2010, the court issued an order awarding primary physical custody to Father. Because Mother was residing in Atlanta, Georgia at the time, the court directed the parties to submit proposed schedules for Mother's periods of partial custody. The parties were to share legal custody. Order, 11/24/2010. Mother filed a motion for reconsideration, which the trial court denied, explaining, *inter alia*, that

> while the determination of credibility is ordinarily a challenging matter, in this particular case[,] it was quite clear that Mother's testimony was not credible and that in certain instances she was manufacturing testimony as she went along.
>
> This is an unfortunate situation where Mother delayed notifying Father of the pregnancy, brought [J.H.] for a few visits after paternity was confirmed, told Father she wanted him to take custody of [J.H.], moved to Georgia and left [J.H.] with

Father, then returned to Philadelphia to file an emergency petition to take [J.H.] back to Georgia.

Mother asked Father to assume custody of [J.H.] in Philadelphia because she had her daughter in Georgia and decided that [J.H.] should be with his Father. She denied asking this of Father, as well as denied having sent an email which made the same request in writing.

* * *

Mother's lack of credibility, quick temper, vulgar language and irresponsibility render her the far less appropriate parent in comparison with Father's honesty, diligence and maturity in assuming responsibility for [J.H.]. Awarding custody to Father will ensure that an appropriate, caring parent will be provide[d] for [J.H.] and will honor his responsibility to ensure that Mother has contact and custody time assigned by the court. The same cannot be said for Mother.

Order, 12/15/2010, at 1-2 (unnecessary capitalization omitted). On December 17, 2010, the court filed an order outlining Mother's periods of partial custody. Specifically, Mother was granted one week of partial physical custody each month. Order, 12/17/2010, at 1. In the summer, the parties were to alternate custody every two weeks. *Id.* at 2.

On May 19, 2011, "Mother filed a petition for modification, alleging that Father was uncooperative about [M]other's legal custody rights and that he interfered with her partial custody. Testimony was taken on December 15, 2011 and [] June 19, 2012[,] and the matter was held under advisement." Summary Opinion, 6/26/2012, at 2.[1] On June 26, 2012, an

---

[1] Between the filing of Mother's petition and the subsequent hearings, Mother filed a motion for special relief. However, neither a copy of the

*(Footnote Continued Next Page)*

interim order was entered denying Mother's modification petition. In an opinion issued that same day, the trial court outlined the various issues between the parties as they navigated co-parenting, shared legal custody, and custody exchanges. *Id.* at 2-12. The trial court ultimately concluded that Father was a credible person who had never "withheld or curtailed Mother's custody and has affirmatively communicated with Mother a significant percentage of the time." *Id.* at 20. The court stated it could not "conclude with confidence that Mother would do the same[.]" *Id.*

Mother filed a motion for reconsideration, setting forth a plethora of grievances concerning the trial court's findings and credibility determinations, which the court eventually denied. A final order was entered on August 10, 2012, which, *inter alia*, changed Mother's periods of custody to "the last two of every seven weeks" during the school year, and provided her primary custody during the summer, with Father exercising two weeks of custody in the middle of the summer. Order, 8/10/2012, at 2.

On August 24, 2012, Mother filed another motion for reconsideration, and then, a notice of appeal to this Court. On April 8, 2013, this Court

---
*(Footnote Continued)* ————————

motion nor information concerning the disposition of the motion is included in the certified record.

affirmed the trial court's order denying Mother's modification petition. ***T.D. v. A.H.***, 75 A.3d 547 (Pa. Super. 2013) (unpublished memorandum).[2]

This case saw no action until December 2014, when Mother *pro se* filed a contempt petition. Soon thereafter, Father filed a petition to modify custody and a petition for emergency relief. Specifically, Father requested sole physical and legal custody of J.H. because J.H. told Father and Father's paramour, L.H., "that he was being physically abused and sexually abused by [M]other's boyfriend and friend." Motion to Modify, 12/19/2014; Petition for Emergency Relief, 12/19/2014. A December 14, 2014 temporary *ex-parte* order was entered suspending Mother's rights and granting Father sole legal and physical custody of J.H. pending further order of court. Order, 12/19/2014.

On December 31, 2014, Mother filed a petition for modification of custody. Therein, Mother set forth the following "significant changes" that had occurred since the prior custody order was entered: (1) Mother obtained a teaching position with the Philadelphia School District and would be returning to Pennsylvania; (2) Father had taken steps to alienate J.H. from Mother, "including but not limited to, petitioning for [e]mergency [s]pecial [r]elief based on fictitious and alarming allegations, upon learning of Mother's pending relocation to Pennsylvania[;]" and (3) Mother had "a fresh new perspective on the importance of co-parenting and putting [J.H.'s] best

---

[2] This Court found most of Mother's issues waived for failure to develop adequately arguments on appeal. ***Id.***

interest first. Mother wishes to make a new start and be an integral part of [J.H.'s] life, while residing closer to Father." Motion to Modify Custody, 12/31/2014, at 1-2 (unnumbered). On January 7, 2015, Father's petition for emergency relief was denied and the *ex parte* order entered on December 19, 2014 was vacated.[3] The August 10, 2012 custody order was to remain in effect pending a hearing on the parties' outstanding modification petitions.

A hearing on the aforementioned modification petitions was held on October 26, 2015, and an order was entered providing Father retain primary physical custody and Mother continue to have partial custody, although Mother was provided more consistent visitation due to her return to Philadelphia. Specifically, Mother was to have partial physical custody of J.H. on alternating weekends from after school Friday to Monday morning. Mother was granted additional periods of custody on alternating weeks on Tuesday evening and on Friday after school until 6:00 p.m. on Saturday. Order, 10/26/2015 at 1. Father was granted sole legal custody because the court found Mother had unilaterally changed J.H.'s daycare center and insurance coverage when she returned to the Philadelphia area. Mother did retain the right to access all medical and school information concerning J.H. Order, 10/26/2015, at 1. Mother filed a motion for reconsideration, which

---

[3] A Department of Human Services (DHS) investigation concluded that the allegations were unfounded. N.T., 10/26/2015, at 37-40.

the trial court granted in part without a hearing. In pertinent part, the court disregarded Mother's request that legal custody be shared by the parties.

In February 2016, Father filed a petition to modify custody, averring his work schedule had changed and he was no longer required to work weekends. Petition to Modify Custody, 2/15/2016. A custody hearing was held in April 2016. As per an April 12, 2016 final order, Father retained "primary physical and sole legal custody and a partial physical custody schedule was set for [M]other for alternating weekends, from after school Friday to Monday morning, with additional custody on alternating weeks from Thursday after school until Friday morning." Opinion on Petitions for Reconsideration, 9/20/2017, at 3. During the summer, the parties were to share custody of J.H. on a week-on/week-off schedule. Order, 4/12/2016.

Mother filed a motion for reconsideration, which the trial court denied by order dated May 18, 2016. Within its order, the court noted that it did "receive and review the reports from two counselors who were providing therapy for [J.H. and the parties]." Order, 5/18/2016, at 1 (unnecessary capitalization omitted). The court stated that

> [t]he remarks of both therapists should evoke horror and concern in both parents upon reading how both therapists noted that the conflict between the parties concerning custody, particularly the conflict exhibited in front of [J.H.] or in remarks to [J.H.] have caused him anxiety, stress[,] and problematic behavior.
>
> Each parent should ask the therapist in private what he/she can do to alleviate [J.H.'s] stress and anxiety and then religiously follow that advice.

- 8 -

***Id.***

In June 2016, Father filed a PFA petition against Mother (on behalf of himself and J.H.) and Mother filed a cross-petition against Father, following an altercation at J.H.'s kindergarten school graduation.[4] "Interim orders were entered for protection only on behalf of [J.H.] against Mother, and on behalf of Mother against Father." Opinion on Petitions for Reconsideration, 9/20/2017, at 7. at 4. As these orders were for "protection only," the interim orders did not prohibit contact between the parties. Despite this fact, Father withheld custody on at least one occasion, prompting Mother to

---

[4] The trial court provided the following summary of the incident based upon the testimony of the parties at two hearings on these cross-petitions. Mother and Father agreed that, following J.H.'s graduation, the parties exited the building and greeted J.H. Opinion on Petitions for Reconsideration, 9/20/2017, at 7. Mother, who made contact with J.H. first, was hugging J.H. when Father's paramour, L.H. approached. ***Id.*** J.H. greeted and hugged L.H., then "ran up to [] Father and Father took [J.H.] into his arms." ***Id.*** Mother then asked Father if Maternal Aunt, who was accompanying Mother, could give J.H. a hug. Father responded that Maternal Aunt could "see [J.H.] more that weekend when Mother has custody of him." ***Id.***

What followed is disputed. Mother testified, and Maternal Aunt corroborated, that Father assaulted Mother and Maternal Aunt, and that during this altercation L.H. was calling Mother names and pulling her hair. ***Id.*** at 7-8. Alternatively, Father claimed that when he declined Mother's request for Maternal Aunt to hug J.H., Mother began calling him names and pulling on his arm. ***Id.*** at 7. Maternal Aunt then approached and started pulling on J.H., and then tased Father, "who fell to the ground and dropped [J.H.]." ***Id.*** L.H.'s testimony supported Father's version of events. L.H. further testified that Mother began the name-calling and hair pulling and at some point, both women ended up on the ground. ***Id.***

- 9 -

file simultaneously a contempt petition and petition for modification on July 5, 2016.

> As summarized by the trial court, in her modification petition,
>
> Mother [sought] shared physical and legal custody, as described by Mother's attorney and Mother, because Mother claim[ed] she has been excluded from activities, there was difficulty and confusion with school communications, Father reportedly arranged for [J.H.] to see a specialist without input from Mother, [L.H.] was attempting to alienate [J.H.] from Mother, [J.H's] half-siblings reside with Mother, Mother felt [J.H.] always wants to be next to her[,] and Mother was concerned about [J.H.'s] reading level.

Opinion on Petitions for Reconsideration, 9/20/2017, at 4. An amended petition for modification was filed on November 8, 2016, wherein Mother averred her request should be granted because, (1) "circumstances [had] changed[;]" (2) Mother resides in a better school district; and (3) Father attacked Mother in front of J.H. Amended Petition for Modification 11/8/2016, at 3 (unnumbered).

The court held hearings in July and December 2016 on the parties' PFA petitions and Mother's contempt petition. At the conclusion of these hearings, "no credibility finding was entered [regarding the PFA petitions]. Both petitions were dismissed because [the trial court determined that] neither version of the incident warranted a protection order." *Id.* With respect to Mother's contempt petition, the court found that while Father did

not deliberately withhold custody of J.H., the award of several "makeup days" to Mother was appropriate.[5] N.T., 12/1/2016, at 48-49.

A hearing was held on Mother's petitions for modification on April 10, 2017.[6] At the conclusion of the hearing, the trial court took the matter under advisement and directed the parties "to send proposed custody schedules and Father was directed to send a copy of [J.H.'s] report card to the [trial] court. After receipt of the requested documents and after transcription of the notes of testimony, a final order was entered on August 10, 2017[,]" providing additional periods of partial custody to Mother, but ultimately denying her request for shared physical and legal custody of J.H. *Id.* *See also* Order, 8/10/2017, at 3. Both parties filed petitions for reconsideration, with Mother filing two petitions.[7] On September 11, 2017, the trial court entered an interim order, which, *inter alia*, denied Mother's petitions for reconsideration. Therein, the court commented that

> Mother's request for shared physical and legal custody is
> denied for the reasons set forth on the record after the hearing.

---

[5] Father testified that he was under the mistaken impression that the protection-only order prohibited contact between the parties. N.T., 12/1/2016, at 24-26.

[6] Only Mother and Father testified at that hearing.

[7] Following the filing of her petitions for reconsideration, Mother filed a notice of appeal to this Court. By order dated September 25, 2017, this Court *sua sponte* quashed Mother's appeal, because our review of the docket revealed that the trial court "timely and expressly granted reconsideration of the August 10[, 2017] order. … In light of the trial court's timely and express grant of reconsideration, this Court" determined that it did not have "jurisdiction over the August 10th order." Order 9/25/2017.

Th[e trial court] has the concern that Mother would unilaterally make changes in [J.H.'s] medical, school[,] and other matters if she were awarded shared legal custody, as she did when she returned to the Philadelphia area and unilaterally changed [J.H.'s daycare] center and insurance coverage. After those actions, Father was awarded sole legal custody.

\* \* \*

It is only Mother's over-aggressive approach to everything related to [J.H.] that forestalls a working relationship between the parties which would benefit [J.H.] … The findings set forth in the order dated December 15, 2010 denying Mother's motion for reconsideration[, after the court granted Father primary custody,] do not appear to have abated.

Order, 9/11/2017, at 2-3. A final order and opinion was entered on September 20, 2017. This order, which made final the September 11th order, provided that Father retain primary physical and sole legal custody of J.H. and awarded Mother periods of partial custody on the weekend. The parties were to share physical custody during the summer, and a comprehensive holiday schedule was provided. Order, 9/11/2017, at 1-3. Mother timely filed a notice of appeal from the September 20th order, and both Mother and the trial court complied with Pa.R.A.P. 1925.

Before we consider the issues presented for our review, we point out that "[a]s a prefatory matter, although this Court is willing to construe liberally materials filed by a *pro se* litigant, *pro se* status generally confers no special benefit upon an appellant. Accordingly, a *pro se* litigant must comply with the procedural rules set forth in the Pennsylvania Rules of the Court." **Commonwealth v. Freeland**, 106 A.3d 768, 776 (Pa. Super. 2014)

(internal citations omitted). Our rules provide that "[b]riefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit[.]" Pa.R.A.P. 2101.

Here, Mother's *pro se* brief fails in many respects to conform to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. Specifically, while the statement of questions involved consists of six claims, Mother's argument section is broken into 21 alleged errors, some of which do not include case law or citations to the record to support her arguments, and most of which fail to address the six issues in her statement of questions involved. Pa.R.A.P. 2119(a)-(c). Furthermore, even though the history of this case spans almost eight years, the factual statement within Mother's brief consists of two sentences. Pa.R.A.P. 2117(a)(4).

Despite the foregoing, we decline to dismiss this appeal based on Mother's nonconforming brief since it does not substantially impede our review of the issues Mother has presented, and Father has not requested a dismissal of this appeal.[8] ***See Jacobs v. Jacobs***, 884 A.2d 301, 305 (Pa. Super. 2005) ("This Court has held that the rules of appellate procedure are 'mandatory, not directing' and it is within our discretion to dismiss an appeal when the rules of appellate procedure are violated. However, if the failure to

---

[8] In fact, Father did not file a brief.

comply with the rules of appellate procedure does not impede review of the issues or prejudice the parties, we will address the merits of the appeal.") (citation and some quotation marks omitted).

In the alternative, we are inclined to find most, if not all of Mother's claims waived for failure to develop adequately arguments on appeal. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *In re W.H.*, 25 A.3d 330, 339, n.3 (Pa. Super. 2011) (quotation marks omitted). The majority of Mother's arguments fail to include applicable citations or relevant authority. In those arguments that do include statutes or citations, Mother fails to analyze and discuss their applicability to the present case. *See In re S.T.S., Jr.*, 76 A.3d 24, 42 (Pa. Super. 2013) ("[M]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter.") (quotation marks omitted). Because the disposition of custody matters affect the welfare of children, we will address the trial court's denial of Mother's modification petitions despite the myriad of deficiencies with which we are presented.

Although Mother cites almost two dozen issues throughout her brief, the crux of this appeal is Mother's belief that the trial court erred by failing to grant her shared legal and physical custody of J.H. Mother's Brief at 2-18. She challenges the court's decision by, *inter alia*, attacking the trial

court's: (1) credibility determinations; (2) consideration of "far past incident[s;]" (3) failure to reference Father's wrongdoing; (4) alleged bias against Mother; and (5) handling of the April 2017 hearing on Mother's modification petitions. Mother's Brief at 2-18. Suffice to say, as evidenced by the lengthy procedural history of this case, Mother continues to disagree with the trial court's determination that shared physical and legal custody is untenable given the parties contentious relationship.

We begin our review mindful of our well-settled standard of review and applicable principles of law.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

> * * *

> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

> * * *

- 15 -

We must accept the trial court's findings that are supported by competent evidence of record, and we defer to the trial court on issues of credibility and weight of the evidence. Additionally,

[t]he parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.L.P. v. R.F.M.*, 110 A.3d 201, 207–08 (Pa. Super. 2015) (citations and quotation marks omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). "A party seeking modification of custody arrangements has the burden to show that modification is in the child's best interest." *Johns v. Cioci*, 865 A.2d 931, 937 (Pa. Super. 2004).

The factors to be considered by a court when awarding or modifying custody are set forth at 23 Pa.C.S. § 5328(a).

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and

which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

> (15) The mental and physical condition of a party or member of a party's household.
>
> (16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

With respect to its decision, the trial court issued an opinion which comprehensively reviewed each custody factor. Opinion on Petitions for Reconsideration, 9/20/2017, at 1-15. Furthermore, in the court's lengthy September 20, 2017 1925(a) opinion, the trial court provided detailed reasoning as to why it denied Mother's modification petitions and determined that shared physical and legal custody was not in the best interest of J.H.

> It must first be noted that Mother's [p]etition for [m]odification was filed on July 5, 2016, a mere three months after the last custody order was entered on April 12, 2016, which followed two separate hearings, several interim orders and disposition of motions for reconsideration. Moreover, Mother filed her petition for custody modification a few days after the parties filed cross-petitions for [PFA] orders, on June 20, 2016[,] and June 21, 2016, respectively, concerning an incident that occurred at [J.H.'s] kindergarten graduation. …
>
> Thus, while it was the beginning of the custody hearing on Mother's custody modification petition, th[e trial] court had already heard testimony on two days about the incidents and interactions between the parties since the order of April 12, 2016, and it was appropriate that the parties be put on notice lest they mistakenly assume that the evidence already heard by the court was not relevant to the custody hearing. Accordingly, th[e] court noted that, as of that particular time, the relationship between the parties did not show shared custody was feasible. As was noted by the [trial] court, for shared custody there must be some minimal communication between the parties, particularly now that [J.H.] attends school. If [J.H.] alternates between two different households every other week, important school matters could be overlooked or misunderstood if the parties do not communicate and/or differences of opinion could spill over into hostile confrontations between the parties. It is a

- 18 -

> different situation during the summer when the need for communication between the households is fairly minimal.
>
> * * *
>
> None of the evidence that followed th[e trial] court's observation at the onset of testimony showed a willingness and ability of the parties to cooperate with one another. Hence, it was not error that said observation was also the conclusion at the end of testimony.

Trial Court Opinion, 11/16/2017, at 5-6.

In this case, Mother requested a modification of custody because: (1) she had been excluded from J.H.'s activities and there was difficulty with school communications; (2) Father arranged for J.H. to see a specialist without input from Mother; (3) Father and L.H. were attempting to alienate J.H. from Mother; (4) J.H.'s half-siblings reside with Mother; (5) Mother believed J.H. always wanted to be next to her; (6) Mother was concerned about J.H.'s reading level and Mother resided in a better school district; and (7) Father attacked Mother at J.H.'s kindergarten school graduation. Petition for Modification, 7/5/2016; Amended Petition for Modification, 11/8/2016.

With respect to these claims, the trial court determined that: (1) although Father admitted that he did not inform Mother about all of J.H.'s extracurricular activities because "the parties do not get along and [J.H.] gets anxious and doesn't do well[,]" Mother has an "open door policy with the school since she goes to [J.H.'s] school on a regular basis to read to

J.H.'s class[;]"[9] (2) Father did not arrange for J.H. to see a specialist without

Mother's input;[10] (3) Father and L.H. were not alienating J.H. from Mother;

(4) "Mother was awarded an additional period of overnight custody on her

alternating weekend custody time so [J.H.] could spend more time with his

siblings[;]" (5) "Father testified persuasively that [J.H.] is improving in

school, academically and behavior-wise, and has adjusted to a routine[.] …

[I]t is important for [J.H.'s] continued well-being that his calm and routine

---

[9] Furthermore, despite Father having sole legal custody, the court has repeatedly noted in subsequent orders that Mother continues to have "the right to access all school and medical information" concerning J.H. *See* Order, 4/12/2016. *See also* Opinion on Petitions for Reconsideration, 9/20/2017, at 12 ("The orders of October 26, 2015 and April 12, 2016 make it clear that Mother has the right of access to all medical and school information concerning [J.H.]"). Notably, these orders provide Mother with access to retrieve this information, and do not require Father to provide it directly.

[10] With respect to this specialist appointment, Father testified that he was concerned about J.H.'s snoring, which he stated could potentially stop J.H. "from breathing at nighttime[.]" N.T., 4/10/2017, at 35. The pediatrician suggested J.H. be seen by a specialist, and Mother was under the impression that an appointment was made without her knowledge. *Id.* at 77-78. To the contrary, although Father had been told to follow up with a specialist, he never requested a referral or made the necessary appointment. *Id.* at 131-132. Thus, Mother's complaint is meritless.

However, we do note our disapproval that despite Father's testimony that he was concerned about J.H.'s snoring, he failed to follow up with an appointment with a specialist per the pediatrician's instructions. *Id.* This is especially concerning giving the fact that Father has sole legal custody. On appeal, Mother argues that Father's failure to follow up as needed is a factor that should weigh against him. Mother's Brief at 9-10. We agree. Nonetheless, based on the trial court's ultimate conclusions, the court's failure to weigh this incident in favor of Mother would not have changed the outcome, and thus no reversible error can be found.

continues[;]" (6) J.H.'s reading level and overall progress in school had improved; and (7) "Mother and [Maternal Aunt] were responsible for the altercation" at J.H.'s graduation. Opinion on Petitions for Reconsideration, 9/20/2017, at 6, 8-12.

Much of the court's conclusions are based upon the credibility determinations it made after listening to testimony and its significant knowledge of the history and relationship between the parties. Regarding these determinations, our standard of review provides great deference to the trial court. *See D.K. v. S.P.K.,* 102 A.3d 467, 478 (Pa. Super. 2014) (quoting *J.R.M. v. J.E.A.,* 33 A.3d 647, 650 (Pa. Super. 2011)) ("[W]ith regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.").

Additionally, we disagree with Mother's assertion that the court's focus on previous incidents and Mother's past behavior was improper. Custody cases should not be heard and reviewed in a vacuum, and the history and past conduct of a party, especially if the behaviors or issues continue to persist, is important and necessary to consider when potentially modifying custody. *See R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1239 (Pa. Super. 2009) ("Best interest cannot be considered in a vacuum and w[h]ere the circumstances unchanged from those that resulted in the initial custody

arrangement, it must be presumed that what was in the child's best interest continues.") (quotation marks omitted).

Here, Mother filed a modification petition less than three months after a final custody order had been entered. The court found that Mother presented no evidence or testimony to warrant a modification. We see no error in this conclusion.

> It is axiomatic that the potential harm that may result from the disruption of established patterns of care and emotional bonds underscores the need for continuity, stability, and finality imparted to custody arrangements. A modification of custody is not warranted merely because one parent is unhappy with the existing arrangement. Thus, we repeatedly have emphasized that a party requesting modification must prove that the alteration of an existing custody arrangement is in the child's best interest.

*Jackson v. Beck*, 858 A.2d 1250, 1252 (Pa. Super. 2004). *See also* Opinion on Petitions for Reconsideration, 9/20/2017, at 15 ("T[he trial] court concludes that Mother has not deviated from her pattern of pursuing what she wants as far as [J.H.] is concerned, without regard for whether or not Father agrees, nor the actual impact on [J.H.'s] well-being. Father would likely welcome co-parenting cooperation on Mother's part, but unless and until Mother's pattern of conduct and attitude changes, shared physical and shared legal custody are not in [J.H.'s] best interest.").

Thus, because we find no abuse of discretion, we affirm the order of the trial court.

Order affirmed.

J-A08038-18

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/12/18